# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: November 30, 2022

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| DOREEN E. BEER, | * | No. 19-348V |
| | * | |
| Petitioner, | * | Special Master Sanders |
| | * | |
| v. | * | Decision; Tetanus, Diphtheria, Acellular |
| | * | Pertussis ("Tdap") Vaccine; Shoulder Injury |
| SECRETARY OF HEALTH | * | Related to Vaccine Administration |
| AND HUMAN SERVICES, | * | ("SIRVA") |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

*Elizabeth M. Muldowney*, Sands Anderson PC, Richmond, VA, for Petitioner.
*Amanda Pasciuto*, United States Department of Justice, Washington, DC, for Respondent.

## DECISION ON ENTITLEMENT[1]

On March 7, 2019, Doreen E. Beer ("Petitioner") filed a petition for compensation in the National Vaccine Injury Compensation Program ("the Program").[2] Pet., ECF No. 1. Petitioner alleged the diphtheria, tetanus, and acellular pertussis ("Tdap") vaccine she received on June 22, 2012, caused her to suffer from a shoulder injury related to vaccine administration ("SIRVA"). *Id.* at 1. Petitioner alleged that she suffered from SIRVA as defined in the Vaccine Injury Table ("Table"). *Id.* at 1–2. Petitioner stated that "[i]n the alternative, if it is determined that [she] suffered from some underlying immunologic, neurologic or genetic disorder," her vaccination "significantly aggravated that underlying disorder resulting in her development of pain and decreased range of motion in her left arm . . . ." *Id.* at 2.

Petitioner noted in her petition that "the Vaccine Injury Table was revised to include [SIRVA] as a" Table injury on March 17, 2017. *Id.* at 1 n.1 (citing § 300aa-14). Petitioner stated that her claim is not barred by the statute of limitations due to this revision. *Id.* (citing § 300aa-

---

[1] This Decision shall be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must be filed within 14 days of the issuance of this Decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755 ("the Vaccine Act" or "Act"). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

16(a)). While this case was in the Special Processing Unit ("SPU"), Respondent filed his Rule 4(c) report and argued that Petitioner cannot establish that she meets the requirements for a Table SIRVA. Resp't's Report at 18–19, ECF No. 27. Respondent asserted that Petitioner's claim is therefore time barred because she cannot "utilize[e] the 'lookback' provision in Section 16(b)[3] of the Vaccine Act." *Id.* at 19. Respondent accordingly filed a motion to dismiss this case. Mot. to Dismiss, ECF No. 28. The chief special master denied Respondent's motion because he found "that there is a question of whether the claim meets the [Qualifications and Aids to Interpretation ("QAI")] criteria for a Table SIRVA that may require additional evidence and/or proceedings." Order denying Mot. to Dismiss at 6, ECF No. 34. The chief special master determined, however, that "unless this claim can survive as a Table injury, its admitted untimeliness cannot save it, for it could have been brought as a non-Table claim long ago." *Id.* at 5. After this case was reassigned to me, I allowed the parties to file addenda regarding the Table criteria. Scheduling Order, ECF No. 43. The parties elected to file supplemental briefs. Resp't's Supp. Br., ECF No. 44; Pet'r's Supp. Br., ECF No. 45.

After carefully analyzing and weighing all the evidence and testimony presented in this case in accordance with the applicable legal standards,[4] I find that Petitioner has not presented a claim that fulfills the requirements for a Table SIRVA. Accordingly, Petitioner is not entitled to compensation.

## I.   Procedural History

Petitioner filed her petition on March 7, 2019, and this case was assigned to SPU the next day. Pet.; ECF Nos. 4–5. Petitioner filed medical records, affidavits, and a statement of completion on March 8, 2019. Pet'r's Exs. 1–36, ECF Nos. 6–10. An initial status conference was held on May 20, 2019. Min. Entry, docketed May 20, 2019. At Respondent's request, Petitioner filed additional medical records on April 16, 2020 and June 4, 2020, as well as an amended statement of completion. Pet'r's Exs. 37–42, ECF No. 19; Pet'r's Exs. 43–44, ECF No. 22; ECF No. 24.

---

[3] Section 16(b) states that:

> [i]f at any time the [Table] is revised and the effect of such revision is to permit an individual who was not, before such revision, eligible to seek compensation under the Program, or to significantly increase the likelihood of obtaining compensation, such person may, notwithstanding section 300aa-11(b)(2) of this title, file a petition for such compensation not later than [two] years after the effective date of the revision, except that no compensation may be provided under the Program within respect to a vaccine-related injury or death covered under the revision of the [T]able if—(1) the vaccine-related death occurred more than [eight] years before the date of the revision of the [T]able, or (2) the vaccine-related injury occurred more than [eight] years before the date of the revision of the [T]able."

[4] While I have reviewed all of the information filed in this case, only those filings and records that are most relevant to the decision will be discussed. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

On July 6, 2020, Respondent filed a status report stating that he did not wish to engage in settlement discussions and that he would like to file a Rule 4(c) report. ECF No. 26 at 1. Respondent filed his Rule 4(c) report and a motion to dismiss on September 4, 2020. Resp't's Report; Mot. to Dismiss. Petitioner filed a response to Respondent's motion on October 9, 2020. Pet'r's Resp. to Mot. to Dismiss, ECF No. 30. The chief special master denied Respondent's motion to dismiss on May 11, 2021. Order denying Mot. to Dismiss.

On June 10, 2021, the parties filed a joint status report indicating that Petitioner was preparing to send a demand to Respondent. ECF No. 35. Petitioner submitted a demand to Respondent on July 27, 2021, and this case was reassigned to me on July 29, 2021. ECF Nos. 37–39. Petitioner filed additional medical records on August 3, 2021, and Respondent indicated via email that he was reviewing Petitioner's demand. Pet'r's Exs. 50–53, ECF No. 40; Informal Comm., docketed Aug. 12, 2021. On August 19, 2021, the parties filed a joint status report stating that Respondent was not interested in settlement at that time. ECF No. 42 at 1.

I held a status conference in this case on November 16, 2021. Min. Entry, docketed Nov. 16, 2021. I indicated concern regarding Petitioner's Table SIRVA claim and noted that "it appear[ed] that Petitioner attributed pain in body sites besides her left shoulder to her vaccination." Scheduling Order at 1, ECF No. 43. I allowed the parties the opportunity to supplement their previously filed briefs "with citations to the record in support of or against Petitioner's assertion that Petitioner's "pain and reduced range of motion [("ROM")] were limited to her left shoulder." *Id.* The parties filed their supplemental briefs on December 17, 2021. Resp't's Supp. Br.; Pet'r's Supp. Br. Petitioner filed an additional medical record on September 6, 2022. Pet'r's Ex. 54, ECF No. 46-1.

This matter is now ripe for consideration.

## II.   Medical History

Petitioner's pre-vaccination medical history is notable for possible multiple sclerosis ("MS"),[5] hypothyroidism,[6] migraines, gastroesophageal reflux disease ("GERD"), depression, and bunions requiring surgery. *See generally* Pet'r's Exs. 3–8, ECF No. 6. Petitioner complained of numbness and tingling, primarily in her arms and legs, between 2010 and 2011. On May 23, 2010, Petitioner complained of numbness and tingling in her arms and legs and stated that the numbness began in her feet six months prior. Pet'r's Ex. 6 at 113, ECF No. 6-6. Petitioner reported tingling in her extremities and groin and facial paresthesias on May 30, 2010. *Id.* at 140. On July 8, 2011,

---

[5] MS is "a disease in which there are foci of demyelination throughout the white matter of the central nervous system, sometimes extending into the gray matter; symptoms usually include weakness, incoordination, paresthesias, speech disturbances, and visual complaints." *Dorland's Illustrated Medical Dictionary* 1653 (33rd ed. 2020) [hereinafter "*Dorland's*"]. The course of MS "is usually prolonged, so that the term *multiple* also refers to remissions and relapses that occur over a period of many years." *Id.* Demyelination is "destruction, removal, or loss of the myelin sheath of a nerve or nerves." *Id.* at 480. Paresthesia is "an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus." *Id.* at 1362.
[6] Hypothyroidism is "deficiency of thyroid activity, characterized by decrease in basal metabolic rate, fatigue, and lethargy[.]" *Dorland's* at 895.

Petitioner reported to a neurologist that her numbness and tingling symptoms had previously resolved but that she had a recurrence of in all four extremities. Pet'r's Ex. 7 at 5, ECF No. 6-7. The neurologist noted that he "had seen her approximately a year ago for some nonspecific sensory symptoms." *Id.* He continued that "[Petitioner] had an extensive neurologic evaluation beforehand, which failed to reveal any definite abnormality." *Id.*

 Petitioner received her Tdap vaccination during a physical with her primary care provider ("PCP") on June 22, 2012. *See* Pet'r's Ex. 9 at 46–50, ECF No. 6-9. Petitioner noted her history of numbness and tingling. *Id.* at 48. She stated that she "w[as] get[ting] severe nausea, then numbness and tingling [in the left] leg and hands." *Id.* Petitioner indicated that she had "MRIs and [was] admitted with MS." *Id.*  Petitioner indicated that her symptoms "[l]ast[] about 1 1/2 months; this is the 3rd year[.]" *Id.* The review of systems indicates, however, that Petitioner reported no numbness, no muscle aches or weakness, no joint pain, no back pain, and no extremity swelling. *Id.* Petitioner had a normal physical exam. *See id.* at 49.

On June 25, 2012, three days post vaccination, Petitioner returned to her PCP reporting pain that "radiate[d] up the arm to the shoulder and down the arm." *Id.* at 44. She stated that an itchy rash erupted that morning. *Id.* She complained that "her left leg [wa]s achy[,] and her left ankle [wa]s a bit swollen." *Id.* On exam, Petitioner's left shoulder was tender, and her left upper arm was "splotchy [with] slightly erythematous flat papules; resembling a drug rash . . . ." *Id.* at 45. Later that day, Petitioner presented to the emergency room reporting an allergic reaction that began four days before. Pet'r's Ex. 6 at 467. Petitioner reported a rash and neck swelling and noted that her swelling had worsened. *Id.* Petitioner also reported neck stiffness. *Id.* at 474. A nurse noted mildly impaired ROM and pain and swelling from a recent tetanus shot. *Id.* at 476. Also on June 25, 2012, Petitioner filed a VAERS report stating that on June 22, 2012, beginning at 11:30 PM, following receipt of a Tdap vaccine, she began experiencing "sever [sic] pain of upper arm that over a period of [twenty-four] hours had move [sic] to the shoulder and elbow area. Unable to move arm. Vomiting, diarrhea." Pet'r's Ex. 35 at 1, ECF No. 9-5.

Petitioner returned to her PCP on June 27, 2012, and reported "continued left shoulder/arm pain since receiving the tetanus shot [five] days ago[.]" Pet'r's Ex. 9 at 42. Petitioner stated that the "lef [sic] side of the neck became enlarged (better now) but still pronounced; state[d] she can normally see her collar bones and she can't now . . . ." *Id.* Petitioner reported enlarged ankles and that her calf was tight "the other night" but was better. *Id.* Petitioner also reported that the left sides of her face and neck were numb. *Id.* Petitioner stated she could not raise her left arm but that her rash was gone. *Id.* A physical exam revealed that Petitioner was only able to raise her left arm to about thirty degrees as well as fullness over the left clavicle and decreased sensation in her face and the left side of her neck. *Id.* The assessment was "pain in limb," and the doctor prescribed Percocet.[7] *Id.* at 38. The PCP wrote, "I still cannot explain these symptoms and how [they are] related to the [Tdap] vaccine; [Petitioner] has NO visible signs of the vaccine; I still cannot find the injection site; she MAY be having an exaggerated immune response to the [vaccine] as she had an un-diagnosed neurologic condition." *Id.* at 39. The physician ordered an MRI. *Id.*

On June 28, 2012, Petitioner presented to the emergency room and complained of left shoulder pain. Pet'r's Ex. 6 at 483. She reported that "[i]mmediately after receiving the [Tdap]

---

[7] Percocet, or oxycodone hydrochloride, is used as an analgesic. *Dorland's* at 1337, 1389.

vaccination she experienced a large amount of pain and a rash moving down the left arm. The next day she began to notice a swelling 'bulge' at the top of the left shoulder and . . . some swelling of the top of the right shoulder as well." *Id.* Petitioner continued that she "became concerned today when the prescribed Percocet was not helping the pain and she noticed some numbness and tingling in the left side of the face." *Id.* Petitioner explained that she received the vaccination on Friday and that she "noted pain from her elbow to her neck, on the [left] side[,] which is where the vaccination was placed[,]" beginning on Saturday morning. *Id.* at 487. The attending physician made several diagnoses, including "other serum reaction due to vaccination[,]" "pain in joint, shoulder region[,]" and "enlargement of lymph nodes." *Id.* at 480.

Petitioner presented for a left shoulder MRI on June 29, 2012. Pet'r's Ex. 9 at 69. The MRI revealed "[a]bnormalities of the infraspinatus[8] . . . with, at minimum, [an] extensive partial thickness tear of the articular[9] surface." *Id.* The radiologist noted that "[a]s there is a fair amount of fluid in the overlying bursal[10] spaces, this does raise concern of an unidentified full thickness tear. The abnormal signal extends medially into the substance of the muscle where there is edema[11] and possible laminar[12] type tearing." *Id.* The MRI also showed an "anterior/anterosuperior labral[13] tear with [a] small anterior perilabral cyst[]" and "[n]onspecific edema in the anterior axillary fat along the course of the brachial plexus[14] structures. Nonspecific lymph nodes are seen in this area." *Id.* The radiologist noted in a July 6, 2012 addendum that "[w]hile the anatomic abnormality of the infraspinatus and labrum are still felt to be present, the odematous [sic] changes described in the infraspinatus and along the neurovascular structures of the axilla could be seen in the setting of Parsonage Turner syndrome [("PTS")].[15]" *Id.* at 71. The radiologist continued that "[t]hese findings are not felt to be related to direct trauma as the results of the tetanus vaccination." *Id.*

On July 1, 2012, Petitioner returned to the emergency room and complained of severe shoulder pain. Pet'r's Ex. 6 at 502. The emergency room doctor wrote that there "does seem to be damages to musculature [sic], and [Petitioner's] exam with painful ROM when [her] infraspinatus is stretched is [consistent with] MRI findings." *Id.* at 503. Petitioner presented to an orthopedist, Dr. Christopher John, on July 2, 2012. Pet'r's Ex. 8 at 46, ECF No. 6-8. Petitioner denied "any new numbness and tingling down the arm[]" but reported severe shoulder pain. *Id.* Dr. John reviewed Petitioner's MRI and opined that "the radiologist['s] reading of a partial tear is somewhat of an over call." *Id.* at 50. Dr. John's impression was "left shoulder[-] neurogenic cause for

---

[8] The infraspinatus muscle rotates the humerus, which is "the long bone of the arm that articulates with the scapula at the shoulder and with the radius and ulna at the elbow[.]" *Dorland's* at 1189, 863.
[9] Articular is "of or pertaining to a joint." *Dorland's* at 156.
[10] Bursa is "a sac or saclike cavity filled with viscid fluid and situated at places in the tissues at which friction would otherwise develop." *Dorland's* at 258.
[11] Edema is "the presence of abnormally large amounts of fluid in the intercellular tissue spaces of the body, usually referring to subcutaneous tissues." *Dorland's* at 587.
[12] Lamina is "a thin flat plate or stratum of a composite structure[]" and often is "used alone to mean the lamina arcus vertebrae." *Dorland's* at 987.
[13] Labrum is "anatomic nomenclature for an edge, brim, or liplike part or structure." *Dorland's* at 982.
[14] Brachial plexus is "a plexus originating from the anterior rami of spinal nerves C5-8 and T1." *Dorland's* at 982. It is "[s]ituated partly in the neck (supraclavicular part) and partly in the axilla (infraclavicular part)[.]" *Id.*
[15] PTS, or neuralgic amyotrophy or brachial neuritis, is characterized by "pain across the shoulder and upper arm, with atrophy and paralysis of the muscles of the pectoral girdle." *Dorland's* at 1813, 70, 1245.

shoulder pain." *Id.* He stated that Petitioner "could have an evolving adhesive capsulitis,[16] or more likely, brachial neuritis with Parsonage Turner like syndrome . . . . It is also possible this could be referred pain from her neck, but seems unlikely given her severe pain with shoulder ROM." *Id.*

Petitioner presented to another orthopedist, Dr. Preston Waldrop, on July 12, 2012. Pet'r's Ex. 10 at 1, ECF No. 6-10. Petitioner reported that, within eighteen hours of her Tdap vaccination, she had "impressive pain in the entire left shoulder girdle with pain radiating all the way up into the side of the face, with swelling of the soft tissues on the side of her neck, trapezial[17] area[,] and the posterior aspect of the shoulder." *Id.* Petitioner stated that "[t]he pain was predominantly in the shoulder area. It really did not extend down to the elbow or to the wrist and hand area." *Id.* Dr. Waldrop opined that Petitioner's vaccination was the cause of her symptoms, and he noted that she had "no significant symptoms down the arm at this point, which certainly would be unusual for [PTS]." *Id.* at 2–3.

On July 27, 2012, Petitioner presented to her neurologist, Dr. Philip Davenport. Pet'r's Ex. 7 at 10. Petitioner reported that she "developed significant pain in the arm[]" eighteen hours post vaccination. *Id.* She stated that the pain "ha[d] progressed to the point where she now [sic] pain from the shoulder all the way into the hand." *Id.* Petitioner asserted that she had "seen two orthopedists who both fe[lt] like it [wa]s not related to [a] rotator cuff[18] problem or muscle tear." *Id.* The neurologist wrote that "[i]t is more than likely another inflammatory process, possibly [PTS]." *Id.* Petitioner reported that she "again in May of this year started developing these little sensory symptoms and muscle twitches and so forth that she has had in past years around this time." *Id.* Dr. Davenport noted that Petitioner's previous brain MRI "showed some scattered white matter abnormalities[, t]he significance of which were uncertain." *Id.* at 10–11. His impression was "[p]ossible right[19] [sic] brachial plexopathy[20] secondary to a [Tdap] booster [five] weeks ago." *Id.* at 11. Petitioner had a normal EMG/NCS, showing no evidence of left brachial plexopathy, on August 3, 2012. *Id.* at 23.

Petitioner returned to Dr. Waldrop on September 6, 2012. Pet'r's Ex. 10 at 8. Petitioner reported that "she underwent a more recent MRI, which did show that she had a plaque in the brain that finally showed up." *Id.* Petitioner stated that she still had some shoulder discomfort but that her shoulder was "dramatically better." *Id.* Petitioner also stated that she "[wa]s developing a burning sensation underneath her fingertips, which [wa]s a little new, although again she has had symptoms down this arm in the past, which she now fe[lt wa]s coming from MS." *Id.* Dr. Waldrop stated that Petitioner's continuing pain and dysfunction was "likely coming from simple loss of dynamic stability in her shoulder." *Id.*

---

[16] Adhesive capsulitis is "adhesive inflammation between the joint capsule and the peripheral articular cartilage of the shoulder with obliteration of the subdeltoid bursa, characterized by shoulder pain of gradual onset, with increasing pain, stiffness, and limitation of motion." *Dorland's* at 281.

[17] The trapezius muscle elevates the shoulder, "rotates [the] scapula to raise [the] shoulder in abduction of [the] arm, [and] draws [the] scapula backward." *Dorland's* at 1195.

[18] The rotator cuff is "a musculotendinous structure about the capsule of the shoulder joint . . . ." *Dorland's* at 436. It "blend[s] with the capsule and provid[es] mobility strength to the shoulder joint." *Id.*

[19] This appears to be an error, as the remainder of this medical record indicates that Petitioner was complaining of symptoms in her left side.

[20] Brachial plexopathy is "any neuropathy of the brachial plexus[.]" *Dorland's* at 1440.

On September 28, 2012, Petitioner followed up with Dr. Davenport, who noted that Petitioner had a repeat brain MRI in August, "which showed a new lesion adjacent to the right side of the corpus callosum[21] with some enhancement." Pet'r's Ex. 7 at 27. Petitioner stated that "[i]n retrospect, she recalls having symptoms as far back as 1994 when her left arm went numb for quite a while." *Id.* Petitioner reported a burning sensation in her forearm and hand and numbness in both legs. *Id.* The impression was "[a]cute relapsing remitting [MS] with a long history of symptoms now with a new enhancing lesion on the MRI of the brain." *Id.* Dr. Davenport stated that Petitioner's new symptoms "may reflect an area of demyelination in the spinal cord." *Id.* at 28.

On October 23, 2012, Petitioner called Dr. Waldrop's office reporting that "she reinjured her left shoulder this past weekend[.]" Pet'r's Ex. 10 at 12. Petitioner presented to Dr. Waldrop on October 29, 2012, and she indicated that her neurologist did not believe her shoulder symptoms were related to her MS. *Id.* at 13. Dr. Waldrop still believed Petitioner's shoulder pain was "related to dynamic stability . . . ." *Id.* Petitioner presented to a new orthopedic surgeon on November 8, 2012. Pet'r's Ex. 13 at 3, ECF No. 7-3. The surgeon's assessment was "possible PTS in the left shoulder." *Id.* at 4.

Petitioner returned to Dr. Waldrop on December 17, 2012, and reported "pain beneath her shoulder blade, pain that goes down her arm on occasion, also [ ] numbness and tingling  on the left side." Pet'r's Ex. 10 at 21. Dr. Waldrop doubted that Petitioner had PTS but did not feel he had "the knowledge to determine what part of her pain and dysfunction [wa]s coming from MS, and what part may be coming from the [PTS] if indeed she has this problem." *Id.* Dr. Davenport likewise doubted that Petitioner had brachial plexopathy on January 24, 2013. Pet'r's Ex. 7 at 31. He noted that there had been discussion about a PTS diagnosis but that Petitioner's "EMG back on August 3, 2012[,] showed no evidence of brachial plexopathy. There were MRI findings that suggested abnormal signal in the infraspinatus, but [he] looked specifically at that muscle during [Petitioner's]  EMG examination[,] and it was entirely normal." *Id.* He noted that the EMG showed "no evidence of denervation whatsoever." *Id.* Dr. Davenport wrote that Petitioner had a repeat left shoulder MRI on December 16, 2012, and that the MRI "indicate[d] that there are some musculoskeletal problems about the shoulder . . . ." *Id.*

On June 24, 2013, Petitioner told her PCP that "her shoulder was healed and that she still didn't have an explanation for the pain." Pet'r's Ex. 9 at 17. Approximately two years later, on June 22, 2015, Petitioner returned to Dr. Davenport and reported "some dysesthesias[22] in the left upper extremity and the right thigh." Pet'r's Ex. 7 at 60. Petitioner presented to a new neurologist on January 4, 2017, reporting difficulties with her left upper extremity and numbness and tingling in her right thigh. Pet'r's Ex. 21 at 5, ECF No. 8-1. The new neurologist opined that "the evidence for [Petitioner's] MS is less than compelling." *Id.* at 7. He was also skeptical of a PTS diagnosis. *Id.* Petitioner had a normal brain MRI on January 17, 2017, and a normal EMG on February 16, 2017. *Id.* at 9–10, 12.

---

[21] The corpus callosum is "an arched mass of white matter, found in the depths of the longitudinal fissure, composed of three layers of fibers . . . ." *Dorland's* at 412.

[22] Dysesthesia is "distortion of any sense, especially that of touch[]" or "an unpleasant abnormal sensation produced by normal stimuli." *Dorland's* at 570.

Petitioner presented to a new orthopedist, Dr. Christopher Young, on March 22, 2017, and she reported shoulder pain since her June 22, 2012 vaccination. Pet'r's Ex. 27 at 1, ECF No. 8-7. She was assessed with rotator cuff tendinopathy,[23] impingement syndrome,[24] and acromioclavicular ("AC") joint arthritis. [25] *Id.* at 2. Dr. Young reviewed Petitioner's left shoulder MRIs from 2012 and 2013 and concluded that they "demonstrate rotator cuff tendinopathy." *Id.* at 9. He stated that the 2012 MRI showed some edema which "resolved on the subsequent MRIs[]" and that there was "no other significant pathology noted on all [three] MRIs." *Id.* Petitioner underwent a left shoulder arthroscopic subacromial decompression[26] and limited debridement[27] on June 14, 2017. *Id.* at 26–27. Her postoperative diagnoses were rotator cuff tendinopathy with impingement and a Type 1 SLAP tear.[28] *Id.* Dr. Young diagnosed Petitioner with thoracic outlet syndrome ("TOS")[29] and cervical strain on September 12, 2017, when Petitioner complained of pain radiating down her arm as well as numbness and soreness in her hand. *Id.* at 23–24.

Petitioner continued to complain of left shoulder pain as well as some pain in other areas between 2017 and 2021. *See, e.g.*, Pet'r's Ex. 29 at 11–12, ECF No. 9; Pet'r's Ex. 27 at 28–34; Pet'r's Ex. 39, ECF No. 19-3; Pet'r's Ex. 37 at 58–62, ECF No. 19-1; Pet'r's Ex. 40 at 1–5, ECF No. 19-4; Pet'r's Ex. 43 at 4–7, 15, ECF No. 22-1; Pet'r's Ex. 54. Dr. Young assessed Petitioner with TOS, adhesive capsulitis, and subacromial impingement on August 14, 2018. Pet'r's Ex. 27 at 29.

## III.    Applicable Legal Standards

To receive compensation under the Vaccine Act, a petitioner must demonstrate either that: (1) the petitioner suffered a "Table injury" by receiving a covered vaccine and subsequently developing a listed injury within the time frame prescribed by the Vaccine Injury Table set forth at 42 U.S.C. § 300aa-14, as modified by 42 C.F.R. § 100.3; or (2) that petitioner suffered an "off-Table injury," one not listed on the Table, as a result of his receiving a covered vaccine. *See* 42 U.S.C. §§ 300aa-11(c)(1)(C); *Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1321

---

[23] Rotator cuff tendinopathy or tendinitis is "an overuse injury consisting of inflammation of tendons of one or more of the muscles forming the rotator cuff, usually owing to repetitive elevation and abduction of the upper limb[.]" *Dorland's* at 1852.

[24] Impingement syndrome is "a type of overuse injury with progressive pathologic changes resulting from mechanical impingement of the acromion, coracoacromial ligament, coracoid process, or acromioclavicular joint against the rotator cuff[.]" *Dorland's* at 1804.

[25] The AC, or scapuloclavicular, joint is "the synovial joint between the acromion of the scapula and the acromial extremity of the clavicle[.]" *Dorland's* at 959, 156. Arthritis is "inflammation of a joint[.]" *Id.* at 154.

[26] Decompression refers to "a surgical operation for the relief of pressure in a body compartment." *Dorland's* at 469.

[27] Debridement is "the removal of foreign material and devitalized or contaminated tissue from or adjacent to a traumatic or infected lesion until surrounding healthy tissue is exposed." *Dorland's* at 467.

[28] A SLAP tear or lesion is an "injury involving the superior glenoid labrum and attachment of the biceps brachii, extending from anterior to posterior[.]" *Dorland's* at 1012.

[29] TOS occurs in the superior thoracic aperture, which is "the upper elliptical opening of the thoracic skeleton into the thoracic cavity, bounded by the first thoracic vertebra, the first ribs and cartilages, and the upper margin of the manubrium sterni." *Dorland's* at 112.

(Fed. Cir. 2010); *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1319–20 (Fed. Cir. 2006).

As determined by Chief Special Master Corcoran in his order denying Respondent's motion to dismiss, Petitioner's claim is time barred pursuant to Section 16 of the Vaccine Act unless it can survive as a Table SIRVA. Order denying Resp't's Mot. to Dismiss at 5. Petitioners generally must file petitions for compensation under the Vaccine Act within three years of injury onset. § 300aa-16(a)(2). However,

> [i]f at any time the Vaccine Injury Table is revised and the effect of such revision is to permit an individual who was not, before such revision, eligible to seek compensation under the Program, or to significantly increase the likelihood of obtaining compensation, such person may . . . file a petition for such compensation" within two years "after the effective date of the revision . . . .

§ 300aa-16(b). This exception applies as long as "the vaccine-related injury occurred more than 8 years before the date of the revision of the table." § 300aa-16(b)(2). Although Petitioner filed her petition more than three years after the onset of her alleged vaccine-related injury, her Table SIRVA claim may proceed pursuant to Section 16. *See* Order denying Resp't's Mot. to Dismiss at 5. However, it cannot survive as an off-Table claim, "for it could have been brought as a non-Table claim long ago." *Id.*

The Vaccine Injury Table considers SIRVA a presumptive injury for the Tdap vaccine if the first symptom or manifestation of onset of the illness occurs within forty-eight hours of an intramuscular vaccine administration. *See* 42 C.F.R. § 100.3(a)(I). The QAI further specify:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> i)     No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
> ii)    Pain occurs within the specified time-frame;
> iii)   Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
> iv)    No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10). The QAI also explain that "SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm." *Id.* The QAI specify that "[t]hese symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction." *Id.* They continue that "SIRVA is not a neurological injury and abnormalities on neurological examination or nerve

conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurologic abnormality is not known)." *Id.*

I am resolving Petitioner's claim on the filed record. The Vaccine Act and Rules not only contemplate but encourage special masters to decide petitions on the papers where, in the exercise of their discretion, they conclude that doing so will properly and fairly resolve the case. *See* § 300aa-12(d)(2)(D); Vaccine Rule 8(d). The decision to rule on the record in lieu of a hearing has been affirmed on appeal. *Kreizenbeck v. Sec'y of Health & Hum. Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020); *see also Hooker v. Sec'y of Health & Hum. Servs.*, No. 02-472V, 2016 WL 3456435, at *21 n.19 (Fed. Cl. Spec. Mstr. May 19, 2016) (citing numerous cases where special masters decided cases on the papers in lieu of hearings and those decisions were upheld). I am not required to hold a hearing in every matter, no matter the preferences of the parties. *Hovey v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 397, 402–03 (1997) (determining that the special master acted within his discretion in denying an evidentiary hearing); *Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993); *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 71500, at *2 (Fed. Cl. Spec. Mstr. Apr. 19, 1991).

## IV.    Discussion

Pursuant to Section 16 and Chief Special Master Corcoran's determination, Petitioner can only establish entitlement to compensation in the Program if she can establish that she suffered from a Table SIRVA. Respondent, however, has argued that Petitioner's "injury is not consistent with SIRVA, as defined" by the Table. Resp't Report at 18. Specifically, Respondent has contended that Petitioner's injury is inconsistent with the third and fourth QAI criteria.[30] *Id.* at 18–19. After reviewing the record, I conclude that the evidence in this case is inconsistent with the requirements for a Table SIRVA.

### A.    Table Criterion Three – Pain Limited to the Affected Shoulder

Respondent asserted that Petitioner's claim is inconsistent with the third criterion because "[P]etitioner's pain and reduced ROM were not limited to the shoulder in which the vaccine was administered." *Id.* He noted that "[f]rom her first report of pain on June 25, 2012, [P]etitioner consistently reported pain, numbness, and tingling radiating into her neck and face and down her arm into her hand, as well as other symptoms such as swelling in her neck." *Id.* at 19. Petitioner argued, however, that her "pain and reduced [ROM] were limited to the left shoulder." Pet'r's Resp. at 15. Petitioner addressed Respondent's concerns regarding Respondent's reports of numbness, tingling, and neck pain post vaccination. *Id.*  She argued that "these were not new complaints after vaccination. Rather, [P]etitioner had made sporadic complaints in the years before her vaccination of similar symptoms[]" that were thought to be neurological. *Id.* In her supplemental brief, as support, Petitioner cited her complaints of numbness and tingling between 2010 and 2011, as well as her statements regarding her neurological history to her PCP on the date of her vaccination. *See* Pet'r's Supp. Br. at 1–3.

Respondent is correct that Petitioner's medical records show that she complained of pain in body sites besides her left shoulder when she contemporaneously complained of left shoulder pain.

---

[30] Because the first and second criteria are not at issue, I will not discuss them herein.

Petitioner initially complained of left shoulder pain three days post vaccination, on June 25, 2012, during an appointment with her PCP. Petitioner reported pain in various other areas during this appointment. She reported pain in her entire left arm rather than just her shoulder. Pet'r's Ex. 9 at 44. Petitioner complained of swelling in her left ankle and that her left leg was "achy." *Id.* Petitioner also reported a rash on her left arm and neck swelling and stiffness. *Id.* at 45; Pet'r's Ex. 6 at 467, 474. In her VAERS report, which she filed on June 25, 2012, Petitioner stated that she had elbow pain, as well as upper arm and shoulder pain, within twenty-four hours of her vaccination. Pet'r's Ex. 35 at 1.

Petitioner continued to complain of pain and various symptoms in other body sites in the days and weeks following her vaccination. Five days post vaccination, Petitioner reported that the left side of her neck, as well as her ankles, were "enlarged," and she also complained of calf tightness. Pet'r's Ex. 9 at 42. Petitioner also reported numbness in the left sides of her face and neck. *Id.* Six days post vaccination, on June 28, 2012, Petitioner reported "swelling on the top of [her] right shoulder" as well as numbness and tingling on the left side of her face. Pet'r's Ex. 6 at 483. Petitioner also "noted pain from her elbow to her neck" on her left side following her vaccination. *Id.* at 489. On July 12, 2012, Petitioner told Dr. Waldrop that she had "pain radiating all the way up into the side of the face, with swelling of the soft tissues on the side of her neck, trapezial area[,] and posterior aspect of the shoulder." Pet'r's Ex. 10 at 1. On July 27, 2012, Petitioner told her neurologist that she developed pain in her arm post vaccination which had "progressed to the point where she now [sic] [had] pain from the shoulder all the way into the hand." Pet'r's Ex. 7 at 10. Petitioner continued to be evaluated for shoulder pain and other symptoms through June 24, 2013, when she told her PCP that "her shoulder was healed[.]" Pet'r's Ex. 9 at 17. Petitioner began complaining of shoulder pain again on June 22, 2015. Pet'r's Ex. 7 at 60. She eventually received multiple diagnoses related to that pain years after she indicated that her post-vaccination pain had resolved.

The medical records demonstrate that Petitioner consistently and repeatedly complained of various symptoms, including pain and/or discomfort, in various body sites other than her shoulder following her vaccination. In the approximately five weeks following her vaccination alone, she complained of pain, specifically, in her left arm, elbow, hand, left leg, neck, and face. She also complained of other symptoms, such as swelling in various areas and numbness and tingling in her face, during this period. The Table is clear, however, that in order to establish a Table SIRVA, "*[p]ain* and reduced range of motion [must be] limited to the shoulder in which the intramuscular vaccine was administered[.]" 42 C.F.R. § 100.3(c)(10)(iii) (emphasis added). *See also, e.g.*, *Wood v. Sec'y of Health & Hum. Servs.*, No. 19-0189V, 2020 WL 8368926, at *6 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (concluding that "medical records contain[ing] instances when [the p]etitioner describes her pain as radiating into her chest and/or down her arm" as well as neck and back pain "are inconsistent with the shoulder-specific pain that must be established under the QAIs."); *Spataro v. Sec'y of Health & Hum. Servs.*, No. 17-1576V, 2021 WL 962442, at *10 (Fed. Cl. Spec. Mstr. Feb. 17, 2021) (determining that a petitioner did not fulfill the third criterion when he complained of pain radiating down his left arm during his initial report of left shoulder pain and when he "reported insidious onset of left shoulder pain followed by bilateral shoulder pain" eleven months after his initial complaint"); *Colbert v. Sec'y of Health & Hum. Servs.*, No. 18-166V, 2022 WL 2232210, at *17 (Fed. Cl. Spec. Mstr. May 27, 2022) (finding that a petitioner did not satisfy

the third criterion when, among other issues, the petitioner "voiced subjective complaints demonstrating that she experienced pain beyond the left shoulder[]").

Petitioner has argued that her symptoms in regions besides her left shoulder are attributable to a preexisting neurological condition and that they should not detract from her SIRVA claim. However, this argument fails to account for the plain wording of the third criterion and the various complaints of pain Petitioner made post vaccination. In her supplemental brief, Petitioner focuses primarily on her intermittent reports of numbness and tingling in her extremities between 2010 and 2011. *See* Pet'r's Supp. Br. at 1–2. However, Petitioner did not complain of extremity numbness and tingling in the days and weeks post vaccination. Petitioner reported some neck and face numbness and tingling during this period. However, she also complained of *pain* in her neck, face, and various other areas, and these complaints do not appear consistent with Petitioner's previous, possibly neurological symptoms. Furthermore, the record indicates that Petitioner was not experiencing neurological symptoms or other symptoms leading up to her June 22, 2012 vaccination. Petitioner's review of systems and physical exam on that date were normal and did not suggest any of the symptoms she complained of beginning three days later. *See* Pet'r's Ex. 9 at 49. I find that Petitioner cannot establish by preponderant evidence that her injury is consistent with the third criterion for a Table SIRVA.

### B.  Table Criterion Four – Alternative Cause of Shoulder Pain

Respondent has asserted that Petitioner cannot fulfill the fourth criterion because "other conditions or abnormalities are present that would explain [P]etitioner's symptoms." Resp't's Report at 19. Respondent asserted that "Petitioner was diagnosed with [brachial neuritis] or PTS by several treating physicians and had a positive MRI finding of edematous changes in the infraspinatus and along the course of the brachial plexus." *Id.* Respondent stated that "[i]t was not until nearly five years after vaccination that [P]etitioner's pain was attributed to shoulder joint pathology, and even after undergoing surgery, [P]etitioner's pain remained and the same orthopedist diagnosed her with TOS." *Id.* Citing Petitioner's EMG/NCS results and some of her medical records, Petitioner disputed that she had PTS or "another underlying condition or abnormality that would have explained her symptoms." *Id.* at 16–17.

Petitioner's treaters considered that Petitioner may have had PTS, but none of the physicians concluded that Petitioner had PTS or a similar neurological condition. Although Dr. Davenport considered that Petitioner may have been suffering from an inflammatory process such as PTS on July 27, 2012, he noted this consideration before Petitioner's normal EMG/NCS on August 3, 2012. Pet'r's Ex. 7 at 10–11, 23. On January 24, 2013, Dr. Davenport noted that he did not believe Petitioner had brachial plexopathy. *Id.* at 31. Dr. Waldrop, although not a neurologist, also doubted that Petitioner had PTS. Pet'r's Ex. 10 at 21. Petitioner's treatment with Dr. Young beginning in 2017 is overall too far removed from her vaccination and the onset of her symptoms to be connected to her post-vaccination condition. Such a connection is especially difficult to make in light of the facts that Petitioner reported that her post-vaccination shoulder pain resolved in June of 2013 and that she did not begin mentioning shoulder pain consistently again until more than three years later. However, it is notable that Dr. Young reviewed Petitioner's MRIs from 2012 and 2013 and did not indicate concern that Petitioner had PTS or a similar condition. *See* Pet'r's Ex. 27 at 9. I find that the record does not contain preponderant evidence that Petitioner suffered from

an alternative condition that would explain her shoulder pain. However, Petitioner still cannot establish that she is entitled to compensation for Table SIRVA due to her failure to establish the third criterion.

**V.    Conclusion**

After a careful review of the record, I find that Petitioner's claim is inconsistent with SIRVA as defined by the Table. Thus, Petitioner cannot establish by preponderant evidence that she suffered from Table SIRVA. Because Petitioner's claim is otherwise time barred, I have no choice but to **DENY** Petitioner's claim and **DISMISS** her petition.[31]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[31] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.